IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| 1) FAIBEIN A. DAVIS,<br>2) KEITH K. SMITH, and<br>3) CHRIS E. SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>1) FEDEX GROUND PACKAGE<br>   SYSTEM, INC.,<br>2) PRIME DELIVERY, INC.,<br>3) WOLFPACK DELIVERY, INC.,<br>4) JAY D. BROWNSTEIN, and<br>5) ALBERT BEJAR,<br><br>Defendants. | Civil Action No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

1.      Plaintiffs Faibein A. Davis ("Davis"), Keith K. Smith ("K. Smith"), and Christopher E. Smith ("C. Smith") (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this action against Defendants FedEx Ground Package System, Inc. ("FedEx"), Prime Delivery, Inc. ("Prime"), Wolfpack Delivery, Inc. ("Wolfpack"), Jay D. Brownstein (in his individual capacity), and Albert Bejar (in his individual capacity) (collectively "Defendants") to obtain full and complete relief for Defendants' failure to pay overtime and other compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., ("FLSA").

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(d) because the unlawful employment acts set forth herein were committed within the Atlanta Division of the United States District Court for the Northern District of Georgia.

## PARTIES

4.      Plaintiffs are citizens of the United States of America and residents of the State of Georgia.

5.      FedEx is a Delaware corporation with its principal offices at 1000 FedEx Drive, Moon Township, Pennsylvania 15108.

6.      FedEx conducts business throughout the United States, including within the Atlanta Division.

7.      Plaintiffs delivered FedEx packages to FedEx customers throughout Fulton and Gwinnett counties.

8.      FedEx may be served with process by delivering a copy of the Summons and Complaint to its registered agent, The Corporation Company, at 112 North Main Street, Cumming, Georgia 30040.

9.      Wolfpack is a Georgia corporation with its principal offices at 300 Colonial Center Parkway, Suite 100N, Roswell, Georgia 30076.

10.     Wolfpack may be served with process by delivering a copy of the Summons and Complaint to its registered agent, Registered Agents, Inc., at 300 Colonial Center Parkway, Suite100N, Roswell, Georgia 30076.

11.     Bejar owns Wolfpack and serves as its Chief Executive Officer.

12.     Bejar is a resident of the state of Georgia and may be served with process by delivering a copy of the Summons and Complaint to Wolfpack's place of business at 300 Colonial Center Parkway, Suite 100N, Roswell, Georgia 30076.

13.     Prime is a Georgia corporation with its principal offices at 2010 Montreal Road, Tucker, Georgia 30084.

14.     Prime may be served with process by delivering a copy of the Summons and Complaint to its registered agent, Jay D. Brownstein, at 2010 Montreal Road, Tucker, Georgia 30084.

15.     Brownstein owns Prime and serves as its Chief Executive Officer, Chief Financial Officer, and Secretary.

16.     Brownstein is a resident of the state of Georgia and may be served with process by delivering a copy of the Summons and Complaint to Prime's place of business at 2010 Montreal Road, Tucker, Georgia 30084.

## <u>GENERAL FACTUAL ALLEGATIONS</u>

17.     Defendants are governed by and subject to the FLSA.

18.     Defendants are enterprises engaged in commerce or in the production of goods for commerce.

19.     FedEx provides package pickup and delivery services throughout the United States.

20.     FedEx contracts with other entities to provide these package pickup and delivery services.

21.     From December 30, 2016 to the present (the "Relevant Time Period"), FedEx contracted with Prime and Wolfpack to deliver FedEx packages to FedEx customers within designated service areas in the state of Georgia.[1]

22.     Plaintiffs were individually engaged in commerce for purposes of the FLSA.

23.     Plaintiffs transported FedEx packages, some of which came from outside the state of Georgia, to FedEx customers within the state of Georgia.

24.     During a portion of the Relevant Time Period, FedEx was Prime's sole client and its sole source of revenue.

25.     During a portion of the Relevant Time Period, FedEx was Wolfpack's sole client and its sole source of revenue.

---

[1] FedEx contracted with Prime until around September 30, 2019, at which time Wolfpack assumed Prime's contract with FedEx. Nothing changed when Wolfpack took over—Plaintiffs continued working as FedEx delivery drivers under the same terms and conditions they had when jointly employed by Prime and FedEx.

26.    During the Relevant Time Period, FedEx/Prime and FedEx/Wolfpack (individually and/or combined) had at least $500,000.00 in annual gross volume of sales made or business done.

27.    Defendants were Plaintiffs' "employers" within the meaning of the FLSA.

28.    Plaintiffs were Defendants' "employees" within the meaning of the FLSA.

29.    Wolfpack classified Plaintiffs as employees.

30.    Prime classified Plaintiffs as employees.

31.    FedEx treated Plaintiffs as employees.

32.    During the Relevant Time Period, Plaintiffs were jointly employed by Defendants.

33.    Plaintiffs worked directly for Prime (and later Wolfpack starting in late September 2019 when it assumed Prime's contract with FedEx), but FedEx controlled almost every aspect of Plaintiffs' work.

34.    Prime/Wolfpack could not hire Plaintiffs without first obtaining approval from FedEx.

35.    As a condition of working at Prime/Wolfpack as delivery drivers for FedEx, Plaintiffs were required to complete a FedEx application at the FedEx warehouse in Norcross, Georgia, and to pass FedEx pre-employment screenings (including a drug test and background check). Only once FedEx authorized Plaintiffs to work as delivery drivers could Prime/Wolfpack then hire Plaintiffs.

36.    Plaintiffs did not need any special skills to work as delivery drivers.

37.    Plaintiffs were required to hold themselves out to the public and to customers as FedEx employees.

38.    Plaintiffs were required to wear FedEx uniforms, carry a FedEx photo identification badge on their persons, and comply with FedEx grooming standards.

39.    Plaintiffs drove vehicles approved by FedEx.

40.    Plaintiffs drove vehicles with the FedEx logo.

41.    Plaintiffs worked out of a facility that was controlled and operated by FedEx (the "FedEx Terminal").

42.    Plaintiffs were required to report to the FedEx Terminal before and after their delivery routes.

43.    FedEx determined which packages the Plaintiffs delivered, what day they delivered those packages, and how they delivered those packages (i.e., whether to leave the package at the customer's front or back door, whether to leave the package with a neighboring office, whether to obtain the customer's signature, etc.).

44.    Each morning at the FedEx Terminal, FedEx employees sorted and set aside packages for each Plaintiff to deliver. Each Plaintiff scanned those packages using FedEx handheld scanners and loaded those packages onto their vehicles.

45.    The FedEx scanners provided Plaintiffs with information and instructions regarding their deliveries.

46.     The FedEx scanners (which have built-in GPS trackers) allowed FedEx to monitor Plaintiffs throughout the day.

47.     Each morning at the FedEx Terminal, a FedEx employee gave each Plaintiff a FedEx Manifest.

48.     The FedEx Manifest provided more details and instructions about Plaintiffs' delivery routes that day, such as the number of stops, when to make those stops, the number of pick-ups, and the total number of packages to be delivered that day.

49.     Plaintiffs were not allowed to leave the FedEx Terminal and begin their delivery routes until a FedEx Terminal employee authorized them to do so.

50.     When Plaintiffs returned to the FedEx Terminal upon completing their routes, they were required to remain at the FedEx Terminal until every package on their routes had been accounted for.

51.     Plaintiffs were required to comply with FedEx safety standards and were subjected to random safety checks by FedEx employees.

52.     FedEx disciplined Plaintiffs either directly or indirectly through Prime and Wolfpack.

53.     Plaintiffs' work was integral to FedEx.

54.     FedEx is in the business of delivering packages to FedEx customers, which is precisely what Plaintiffs did.

55.     Plaintiffs were economically dependent on FedEx.

56.     Prime and Wolfpack worked exclusively with FedEx, so the only work available to Plaintiffs was as FedEx delivery drivers.

57.     FedEx contributed (directly or indirectly) to the wage violations at issue.

58.     FedEx paid Plaintiffs through Prime and Wolfpack.

59.     FedEx paid Prime and Wolfpack a fixed rate for each package that Plaintiffs delivered, but FedEx intentionally paid nothing for the non-delivery work ("non-production work") that it required Plaintiffs to perform (e.g., the time Plaintiffs spent loading and scanning packages onto their delivery trucks every morning, the time Plaintiffs spent driving their delivery trucks back to the FedEx Terminal upon completing their routes, etc.).

60.     Since the per-package compensation model did not account for Plaintiffs' non-production work and an overtime premium, it was virtually impossible for Prime and Wolfpack to pay Plaintiffs for their non-production work and overtime and still be profitable. Therefore, Prime and Wolfpack intentionally paid Plaintiffs nothing for their non-production work and no overtime premium.

61.     Plaintiffs had no ability to negotiate the package delivery rates paid by FedEx.

62.     Defendants knew that Plaintiffs were entitled to overtime pay.

63.     Defendants knew that Plaintiffs drove delivery trucks with a GVWR of 10,000 pounds or less.

64.    Defendants knew that Plaintiffs consistently worked more than 40 hours per week (including during those weeks when Plaintiffs drove delivery trucks with a GVWR of 10,000 pounds or less).

65.    FedEx monitored Plaintiffs' work hours, and Plaintiffs complained to Defendants about working more than 40 hours without additional pay.

66.    Under the "small vehicle" exception, delivery drivers who operate vehicles weighing 10,000 pounds or less (like Plaintiffs) are not covered by the Motor Carrier Act ("MCA") exemption to the FLSA. See SAFETEA-LU Technical Corrections Act of 2008 (the "TCA"), § 306(a), (c).

67.    Defendants have been aware of the "small vehicle" exception to the MCA exemption.

68.    FedEx has litigated numerous cases involving the "small vehicle" exception to the MCA prior to January 2017.

## COUNT ONE
## Failure to Pay Appropriate Wages Under the Fair Labor Standards Act
### (Davis, K. Smith, and C. Smith v. FedEx, Prime, and Brownstein)

69.    Plaintiffs reassert and incorporate by reference Paragraphs 17 through 68 of this Complaint as if fully set forth herein.

70.    During a portion of the Relevant Time Period (January 3, 2017 until around September 30, 2019), Plaintiffs were the "employees" of FedEx, Prime, and Brownstein ("Defendants" for purposes of this Count).

71.     During a portion of the Relevant Time Period (January 3, 2017 until around September 30, 2019), Defendants were Plaintiffs' "employers."

72.     During a portion of the Relevant Time Period (January 3, 2017 until around September 30, 2019), Defendants jointly employed Plaintiffs.

73.     FedEx (either directly or indirectly) controlled almost every aspect of Plaintiffs' work as delivery drivers, including whether Plaintiffs were hired, how Plaintiffs did their jobs, when Plaintiffs did their jobs, Plaintiffs' pay, etc.

74.     During a portion of the Relevant Time Period (January 3, 2017 until around September 30, 2019), Plaintiffs consistently worked more than 40 hours in a week but were not paid overtime.

75.     During a portion of the Relevant Time Period (January 3, 2017 until around September 30, 2019), Plaintiffs drove delivery trucks with a GVWR of 10,000 pounds or less.

76.     Under the FLSA, Plaintiffs were entitled to be paid the overtime premium for those weeks when they drove delivery trucks with a GVWR of 10,000 pounds or less and worked more than 40 hours in a week.

77.     Defendants failed to pay Plaintiffs the overtime premium for those weeks when they drove delivery trucks with a GVWR of 10,000 pounds or less and worked more than 40 hours in a week.

78.    Under the FLSA, Plaintiffs were also entitled to be paid "straight time" for their non-overtime, non-production work at the production rate.

79.    Defendants failed to pay Plaintiffs "straight time" for their non-overtime, non-production work at the production rate.

80.    Under the FLSA, Plaintiffs were also entitled to be paid "time-and-a-half" (i.e., straight time plus the overtime premium) for their overtime, non-production work at the production rate.

81.    Defendants failed to pay Plaintiffs "time-and-a-half" for their overtime, non-production work at the production rate.

82.    Plaintiffs were paid nothing for their non-production hours (both overtime and non-overtime).

**Willfulness**

83.    Defendants willfully disregarded their obligations under the FLSA and, therefore, the statute of limitations period should be extended from two years to three years.

84.    Defendants knew that Plaintiffs fell within the "small vehicle" exception to the MCA.

85.    Defendants knew that Plaintiffs drove delivery trucks weighing 10,000 pounds or less.

86.     The GVWR was displayed inside the delivery trucks that Defendants assigned to Plaintiffs.

87.     Defendants knew that Plaintiffs worked more than 40 hours in a week.

88.     Defendants required Plaintiffs to report to the FedEx terminal several hours before they began their delivery routes.

89.     Defendants required Plaintiffs to drive back to the FedEx terminal upon completing their routes.

90.     Defendants often scheduled Plaintiffs to work six days per week.

91.     Plaintiffs complained to Defendants about not being paid overtime for working over 40 hours.

92.     Defendants failed to keep an accurate record of all hours worked by Plaintiffs.

### **Individual Liability and Willfulness as to Brownstein**

93.     Brownstein is personally liable because he acted directly or indirectly in the interests of an "employer" in relation to Plaintiffs.

94.     Brownstein is the sole owner of Prime.

95.     Brownstein is also the CEO, CFO, and Secretary of Prime.

96.     Brownstein was directly or indirectly involved in decisions affecting the terms and conditions of Plaintiffs' employment, including the decision not to pay Plaintiffs overtime.

97.    Brownstein, who has been licensed to practice law in the state of Georgia since 1988, engages in "business and employment litigation." <u>See</u> screenshots of law firm website, attached hereto as **<u>Exhibit "A"</u>**. Specifically, Brownstein provides "legal advice and counsel [to] Georgia business owners" concerning "compliance with federal and state employment laws." <u>See</u> **<u>Exhibit "A"</u>**.

98.    Brownstein has litigated cases arising under the FLSA, including an FLSA collective action on behalf of delivery drivers.

### <u>Count I Damages</u>

99.    As a result of Defendants' unlawful conduct, Plaintiffs are entitled to recover their unpaid overtime wages and an equivalent amount as liquidated damages, their unpaid non-overtime wages and an equivalent amount as liquidated damages, and their attorneys' fees and costs.

### <u>Estimate of Plaintiff Davis's Damages Under Count I</u>

100.    Plaintiff Davis was jointly employed by Defendants from around November 3, 2018 to around September 30, 2019.

101.    From around November 3, 2018 to around February 28, 2019, Mr. Davis drove a delivery truck that had a gross vehicle weight rating (GVWR) of 10,000 pounds or less.

102.    During that time, Mr. Davis consistently worked more than 40 hours per week but was not paid overtime.

103.   Mr. Davis was also paid nothing for his non-production time (both overtime and non-overtime) during that period.

104.   From November 2018 through December 2018, Mr. Davis estimates that he worked approximately 12 hours per day (with no lunch break), five days per week, and approximately 8 hours (with no lunch break) one day per week. From January 2019 through February 2019, Mr. Davis estimates that he worked approximately 10 to 12 hours per day (with no lunch break), five days per week.

105.   From November 2018 through February 2019, Mr. Davis estimates that he spent 3.5 hours per day on non-production time, for which he was paid nothing. This consisted of morning time in the warehouse (2.5 hours on average), time spent driving back to the warehouse at the end of the day (45 minutes on average), and time spent returning undelivered packages (or picked-up packages) and returning the vehicle at the end of the day (15 minutes on average).

106.   From November 2018 through December 2018, Mr. Davis estimates that he spent 47 hours per week on production time and 21 hours per week (3.5 x 6) on non-production time (in other words, 69.12% of his time was production time, and 30.88% was non-production time). From January 2019 through February 2019, Mr. Davis estimates that he spent 37.5 hours per week on production time and 17.5 hours per week (3.5 x 5) on non-production time (in other words, 68.18% of his time was production time, and 31.82% was non-production time).

107.   Throughout Mr. Davis's employment with Defendants, he was paid a fixed daily rate based on the estimated range of daily deliveries.

108.   During the period between November 2018 and February 2019, Mr. Davis was paid a fixed daily rate of $130.00.

109.   Based on Mr. Davis's good-faith estimate of his work hours, he is owed approximately **$2,083.09** in actual unpaid wages for his production overtime.[2]

110.   Based on Mr. Davis's good-faith estimate of his work hours, he is owed approximately **$2,838.57** in actual unpaid wages for his non-production overtime.[3]

---

[2] **2018:** [19.35 (Production OT hours)] x [8 (weeks)] x [$8.30 (half the production rate)] = **$1,284.84**. Production overtime hours were calculated as follows: [28 (Total OT hours)] x [0.6912 (percentage of production time)]. The production rate was calculated as follows: [$780 (weekly rate)] / [47 (weekly production hours)].
**2019:** [10.23 (Production OT hours)] x [9 (weeks)] x [$8.67 (half the production rate)] = **$798.25**. Production overtime hours were calculated as follows: [15 (Total OT hours)] x [0.6818 (percentage of production time)]. The production rate was calculated as follows: [$650 (weekly rate)] / [37.5 (weekly production hours)].
[3] **2018:** [8.65 (Non-Production OT hours)] x [8 (weeks)] x [$24.89 (one-and-one-half times' the production rate)] = **$1,722.39**. Non-production overtime hours were calculated as follows: [28 (Total OT hours)] x [0.3088 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$780 (weekly rate)] / [47 (weekly production hours)].
**2019:** [4.77 (Non-Production OT hours)] x [9 (weeks)] x [$26.00 (one-and-one-half times' the production rate)] = **$1,116.18**. Non-production overtime hours were calculated as follows: [15 (Total OT hours)] x [0.3182 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$650 (weekly rate)] / [37.5 (weekly production hours)].

111.   Based on Mr. Davis's good-faith estimate of his work hours, he is owed approximately **$3,625.58** in actual unpaid wages for his non-production, non-overtime hours.[4]

**Estimate of Plaintiff K. Smith's Damages Under Count I**

112.   Plaintiff K. Smith was jointly employed by Defendants from September 7, 2018 to around September 30, 2019.

113.   From September 7, 2018 to around August 31, 2019, Mr. K. Smith drove a delivery truck that had a GVWR of 10,000 pounds or less.

114.   During that time, Mr. K. Smith consistently worked more than 40 hours per week but was not paid overtime.

115.   Mr. K. Smith was also paid nothing for his non-production time (both overtime and non-overtime) during that period.

---

[4] **2018:** [12.35 (Non-Production Non-OT hours)] x [8 (weeks)] x [$16.60 (the production rate)] = **$1,640.08**. Non-production, non-overtime hours were calculated as follows: [40 (Total Non-OT hours)] x [0.3088 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$780 (weekly rate)] / [47 (weekly production hours)].
**2019:** [12.73 (Non-Production Non-OT hours)] x [9 (weeks)] x [$17.33 (the production rate)] = **$1,985.50**. Non-production, non-overtime hours were calculated as follows: [40 (Total Non-OT hours)] x [0.3182 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$650 (weekly rate)] / [37.5 (weekly production hours)].

116.   From September 2018 through November 2018, Mr. K. Smith estimates that he worked approximately 10 to 12 hours per day (with no lunch break), five days per week.

117.    During the month of December 2018, Mr. K. Smith estimates that he worked approximately 10 to 12 hours per day (with no lunch break), five days per week, and approximately 8 hours one day per week (with no lunch break).

118.   From January 2019 through August 31, 2019, Mr. K. Smith estimates that he worked approximately 9 to 10 hours per day (with no lunch break), five days per week.

119.   From September 2018 through August 31, 2019, Mr. K. Smith estimates that he spent 2.5 hours per day on non-production time, for which he was paid nothing. This consisted of morning time in the warehouse (1.5 hours on average), time spent driving back to the warehouse at the end of the day (45 minutes on average), and time spent returning undelivered packages (or picked-up packages) and returning the vehicle at the end of the day (15 minutes on average).

120.   From September 2018 through November 2018, Mr. K. Smith estimates that he spent 42.5 hours per week on production time and 12.5 hours per week (2.5 x 5) on non-production time (in other words, 77.27% of his time was production time, and 22.73% was non-production time). In December of 2018, Mr. K. Smith estimates that he spent 48 hours per week on production time and 15 hours per week

(2.5 x 6) on non-production time (in other words, 76.19% of his time was production time, and 23.81% was non-production time). From January 2019 through August 31, 2019, Mr. K. Smith estimates that he spent 35 hours per week on production time and 12.5 hours per week (2.5 x 5) on non-production time (in other words, 73.68% of his time was production time, and 26.32% was non-production time).

121.   Throughout Mr. K. Smith's employment with Defendants, he was paid a fixed daily rate based on the estimated range of daily deliveries.

122.   During the period between September 2018 and March 2019, Mr. K. Smith was paid a fixed daily rate of $120.00. That rate increased to $130.00 in April 2019 and to $140.00 in June 2019.

123.   Based on Mr. K. Smith's good-faith estimate of his work hours, he is owed approximately **$3,232.39** in actual unpaid wages for his production overtime.[5]

---

[5] **Sept. 2018 – Nov. 2018:** [11.59 (Production OT hours)] x [12 (weeks)] x [$7.06 (half the production rate)] = **$981.90.** Production overtime hours were calculated as follows: [15 (Total OT hours)] x [0.7727 (percentage of production time)]. The production rate was calculated as follows: [$600 (weekly rate)] / [42.5 (weekly production hours)].
**Dec. 2018:** [17.52 (Production OT hours)] x [4 (weeks)] x [$7.50 (half the production rate)] = **$525.60.** Production overtime hours were calculated as follows: [23 (Total OT hours)] x [0.7619 (percentage of production time)]. The production rate was calculated as follows: [$720 (weekly rate)] / [48 (weekly production hours)].
**Jan. 2019 – Mar. 2019:** [5.53 (Production OT hours)] x [12 (weeks)] x [$8.57 (half the production rate)] = **$568.71.** Production overtime hours were calculated as follows: [7.5 (Total OT hours)] x [0.7368 (percentage of production time)]. The production rate was calculated as follows: [$600 (weekly rate)] / [35 (weekly production hours)].

124.    Based on Mr. K. Smith's good-faith estimate of his work hours, he is owed

approximately **$3,229.93** in actual unpaid wages for his non-production overtime.[6]

---

**Apr. 2019 – May 2019:** [5.53 (Production OT hours)] x [9 (weeks)] x [$9.29 (half the production rate)] = **$437.28.** Production overtime hours were calculated as follows: [7.5 (Total OT hours)] x [0.7368 (percentage of production time)]. The production rate was calculated as follows: [$650 (weekly rate)] / [35 (weekly production hours)].

**Jun. 2019 - Aug. 2019:** [5.53 (Production OT hours)] x [13 (weeks)] x [$10.00 (half the production rate)] = **$718.90.** Production overtime hours were calculated as follows: [7.5 (Total OT hours)] x [0.7368 (percentage of production time)]. The production rate was calculated as follows: [$700 (weekly rate)] / [35 (weekly production hours)].

[6] **Sept. 2018 – Nov. 2018:** [3.41 (Non-Production OT hours)] x [12 (weeks)] x [$21.18 (one-and-one-half times' the production rate)] = **$866.69**. Non-production overtime hours were calculated as follows: [15 (Total OT hours)] x [0.2273 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$600 (weekly rate)] / [42.5 (weekly production hours)].

**Dec. 2018:** [5.48 (Non-Production OT hours)] x [4 (weeks)] x [$22.50 (one-and-one-half times' the production rate)] = **$493.20**. Non-production overtime hours were calculated as follows: [23 (Total OT hours)] x [0.2381 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$720 (weekly rate)] / [48 (weekly production hours)].

**Jan. 2019 – Mar. 2019:** [1.97 (Non-Production OT hours)] x [12 (weeks)] x [$25.71 (one-and-one-half times' the production rate)] = **$607.78**. Non-production overtime hours were calculated as follows: [7.5 (Total OT hours)] x [0.2632 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$600 (weekly rate)] / [35 (weekly production hours)].

**Apr. 2019 – May 2019:** [1.97 (Non-Production OT hours)] x [9 (weeks)] x [$27.86 (one-and-one-half times' the production rate)] = **$493.96**. Non-production overtime hours were calculated as follows: [7.5 (Total OT hours)] x [0.2632 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$650 (weekly rate)] / [35 (weekly production hours)].

125.   Based on Mr. K. Smith's good-faith estimate of his work hours, he is owed approximately **$8,774.90** in actual unpaid wages for his non-production, non-overtime hours.[7]

---

**Jun. 2019 – Aug. 2019:** [1.97 (Non-Production OT hours)] x [13 (weeks)] x [$30.00 (one-and-one-half times' the production rate)] = **$768.30**. Non-production overtime hours were calculated as follows: [7.5 (Total OT hours)] x [0.2632 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$700 (weekly rate)] / [35 (weekly production hours)].

[7] **Sept. 2018 – Nov. 2018:** [9.09 (Non-Production Non-OT hours)] x [12 (weeks)] x [$14.12 (the production rate)] = **$1,540.21**. Non-production, non-overtime hours were calculated as follows: [40 (Total Non-OT hours)] x [0.2273 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$600 (weekly rate)] / [42.5 (weekly production hours)].

**Dec. 2018:** [9.52 (Non-Production Non-OT hours)] x [4 (weeks)] x [$15.00 (the production rate)] = **$571.20**. Non-production, non-overtime hours were calculated as follows: [40 (Total Non-OT hours)] x [0.2381 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$720 (weekly rate)] / [48 (weekly production hours)].

**Jan. 2019 – Mar. 2019:** [10.53 (Non-Production Non-OT hours)] x [12 (weeks)] x [$17.14 (the production rate)] = **$2,165.81**. Non-production, non-overtime hours were calculated as follows: [40 (Total Non-OT hours)] x [0.2632 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$600 (weekly rate)] / [35 (weekly production hours)].

**Apr. 2019 – May 2019:** [10.53 (Non-Production Non-OT hours)] x [9 (weeks)] x [$18.57 (the production rate)] = **$1,759.88**. Non-production, non-overtime hours were calculated as follows: [40 (Total Non-OT hours)] x [0.2632 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$650 (weekly rate)] / [35 (weekly production hours)].

**Jun. 2019 – Aug. 2019:** [10.53 (Non-Production Non-OT hours)] x [13 (weeks)] x [$20.00 (the production rate)] = **$2,737.80**. Non-production, non-overtime hours were calculated as follows: [40 (Total Non-OT hours)] x [0.2632 (percentage of non-

**Estimate of Plaintiff C. Smith's Damages Under Count I**

126.   Plaintiff C. Smith was jointly employed by Defendants from September 2016 to around September 30, 2019.

127.   From September 2016 to around July 2018, Mr. C. Smith drove a delivery truck that had a GVWR of 10,000 pounds or less.

128.   During that time, Mr. C. Smith consistently worked more than 40 hours per week but was not paid overtime.

129.   Mr. C. Smith was also paid nothing for his non-production time (both overtime and non-overtime) during that period.

130.   From January 2017 through November 2017, Mr. C. Smith estimates that he worked approximately 12 hours per day (with no lunch break), five days per week. In December 2017, Mr. C. Smith estimates that he worked approximately 12 hours per day (with no lunch break), five days per week, and approximately 8 to 10 hours (with no lunch break) one day per week. From January 2018 to July 2018, Mr. C. Smith estimates that he worked approximately 12 hours per day (with no lunch break), five days per week.

131.   From January 2017 through July 2018, Mr. C. Smith estimates that he spent 2.5 hours per day on non-production time, for which he was paid nothing. This

---

production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$700 (weekly rate)] / [35 (weekly production hours)].

consisted of morning time in the warehouse (1.5 hours on average), time spent driving back to the warehouse at the end of the day (45 minutes on average), and time spent returning undelivered packages (or picked-up packages) and returning the vehicle at the end of the day (15 minutes on average).

132.   From January 2017 through November 2017, Mr. C. Smith estimates that he spent 47.5 hours per week on production time and 12.5 hours per week (2.5 x 5) on non-production time (in other words, 79.17% of his time was production time, and 20.83% was non-production time). In December 2017, Mr. C. Smith estimates that he spent 54 hours per week on production time and 15 hours per week (2.5 x 6) on non-production time (in other words, 78.26% of his time was production time, and 21.74% was non-production time). From January 2018 to July 2018, Mr. C. Smith estimates that he spent 47.5 hours per week on production time and 12.5 hours per week (2.5 x 5) on non-production time (in other words, 79.17% of his time was production time, and 20.83% was non-production time).

133.   Throughout Mr. C. Smith's employment with Defendants, he was paid a fixed daily rate based on the estimated range of daily deliveries.

134.   As of January 2017, Mr. C. Smith was paid a fixed daily rate in the amount of $150.00.

135.   Based on Mr. C. Smith's good-faith estimate of his work hours, he is owed approximately **$10,498.46** in actual unpaid wages for his production overtime.[8]

136.   Based on Mr. C. Smith's good-faith estimate of his work hours, he is owed approximately **$8,332.16** in actual unpaid wages for his non-production overtime.[9]

---

[8] **Jan. 2017 – Nov. 2017:** [15.83 (Production OT hours)] x [48 (weeks)] x [$7.89 (half the production rate)] = **$5,995.14**. Production overtime hours were calculated as follows: [20 (Total OT hours)] x [0.7917 (percentage of production time)]. The production rate was calculated as follows: [$750 (weekly rate)] / [47.5 (weekly production hours)].
**Dec. 2017:** [22.70 (Production OT hours)] x [4 (weeks)] x [$8.33 (half the production rate)] = **$756.36**. Production overtime hours were calculated as follows: [29 (Total OT hours)] x [0.7826 (percentage of production time)]. The production rate was calculated as follows: [$900 (weekly rate)] / [54 (weekly production hours)].
**Jan. 2018 – Jul. 2018:** [15.83 (Production OT hours)] x [30 (weeks)] x [$7.89 (half the production rate)] = **$3,746.96**. Production overtime hours were calculated as follows: [20 (Total OT hours)] x [0.7917 (percentage of production time)]. The production rate was calculated as follows: [$750 (weekly rate)] / [47.5 (weekly production hours)].
[9] **Jan. 2017 – Nov. 2017:** [4.17 (Non-Production OT hours)] x [48 (weeks)] x [$23.68 (one-and-one-half times' the production rate)] = **$4,739.79**. Non-production overtime hours were calculated as follows: [20 (Total OT hours)] x [0.2083 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$750 (weekly rate)] / [47.5 (weekly production hours)].
**Dec. 2017:** [6.30 (Non-Production OT hours)] x [4 (weeks)] x [$25.00 (one-and-one-half times' the production rate)] = **$630.00**. Non-production overtime hours were calculated as follows: [29 (Total OT hours)] x [0.2174 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$900 (weekly rate)] / [54 (weekly production hours)].
**Jan. 2018 – Jul. 2018:** [4.17 (Non-Production OT hours)] x [30 (weeks)] x [$23.68 (one-and-one-half times' the production rate)] = **$2,962.37**. Non-production overtime hours were calculated as follows: [20 (Total OT hours)] x [0.2083 (percentage of non-production time)]. Non-production hours must be paid at the

137.   Based on Mr. C. Smith's good-faith estimate of his work hours, he is owed approximately **$10,839.51** in actual unpaid wages for his non-production, non-overtime hours.[10]

## COUNT TWO
## Failure to Pay Appropriate Wages Under the Fair Labor Standards Act
(C. Smith v. FedEx, Wolfpack, and Bejar)

138.   Plaintiff C. Smith reasserts and incorporates by reference Paragraphs 17 through 68 of this Complaint as if fully set forth herein.

---

production rate. The production rate was calculated as follows: [$750 (weekly rate)] / [47.5 (weekly production hours)].

[10] **Jan. 2017 – Nov. 2017:** [8.33 (Non-Production Non-OT hours)] x [48 (weeks)] x [$15.79 (the production rate)] = **$6,313.47.** Non-production, non-overtime hours were calculated as follows: [40 (Total Non-OT hours)] x [0.2083 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$750 (weekly rate)] / [47.5 (weekly production hours)].

**Dec. 2017:** [8.70 (Non-Production Non-OT hours)] x [4 (weeks)] x [$16.67 (the production rate)] = **$580.12.** Non-production, non-overtime hours were calculated as follows: [40 (Total Non-OT hours)] x [0.2174 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$900 (weekly rate)] / [54 (weekly production hours)].

**Jan. 2018 – Jul. 2018:** [8.33 (Non-Production Non-OT hours)] x [30 (weeks)] x [$15.79 (the production rate)] = **$3,945.92.** Non-production, non-overtime hours were calculated as follows: [40 (Total Non-OT hours)] x [0.2083 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$750 (weekly rate)] / [47.5 (weekly production hours)].

139.   During a portion of the Relevant Time Period (October 2019 to the present), Mr. C. Smith was the "employee" of FedEx, Wolfpack, and Bejar ("Defendants" for purposes of this Count).

140.   During a portion of the Relevant Time Period (October 2019 to the present), Defendants were Mr. C. Smith's "employers."

141.   During a portion of the Relevant Time Period (October 2019 to the present), Defendants jointly employed Mr. C. Smith.

142.   FedEx (either directly or indirectly) controlled almost every aspect of Mr. C. Smith's work as a delivery driver, including whether he was hired, how he did his job, when he did his job, his pay, etc.

143.   During a portion of the Relevant Time Period (October 2019 to the present), Mr. C. Smith consistently worked more than 40 hours in a week but was not paid overtime.

144.   During a portion of the Relevant Time Period (December 3, 2019 to December 15, 2019), Mr. C. Smith drove a delivery truck with a GVWR of 10,000 pounds or less.

145.   Under the FLSA, Mr. C. Smith was entitled to be paid the overtime premium for those weeks when he drove a delivery truck with a GVWR of 10,000 pounds or less and worked more than 40 hours in a week.

146.   Defendants failed to pay Mr. C. Smith the overtime premium for those weeks when he drove a delivery truck with a GVWR of 10,000 pounds or less and worked more than 40 hours in a week.

147.   Under the FLSA, Mr. C. Smith was also entitled to be paid "straight time" for his non-overtime, non-production work at the production rate during those weeks.

148.   Defendants failed to pay Mr. C. Smith "straight time" for his non-overtime, non-production work at the production rate during those weeks.

149.   Under the FLSA, Mr. C. Smith was also entitled to be paid "time-and-a-half" (i.e., straight time plus the overtime premium) for his overtime, non-production work at the production rate during those weeks.

150.   Defendants failed to pay Mr. C. Smith "time-and-a-half" for his overtime, non-production work at the production rate during those weeks.

151.   Mr. C. Smith was paid nothing for his non-production hours (both overtime and non-overtime).

**<u>Willfulness</u>**

152.   Defendants willfully disregarded their obligations under the FLSA.

153.   Defendants knew that Mr. C. Smith fell within the "small vehicle" exception to the MCA for those weeks when he drove a delivery truck with a GVWR of 10,000 pounds or less.

154.   Defendants knew that Mr. C. Smith drove a delivery truck weighing 10,000 pounds or less for two weeks starting on December 3, 2019.

155.   The GVWR was displayed inside the delivery truck that Defendants assigned to Mr. C. Smith.

156.   Defendants knew that Mr. C. Smith worked more than 40 hours per week during that period.

157.   Defendants scheduled Mr. C. Smith to work six days per week during that period.

158.   Defendants required Mr. C. Smith to report to the FedEx terminal several hours before he began his delivery routes.

159.   Defendants required Mr. C. Smith to drive back to the FedEx terminal upon completing his routes.

160.   Defendants failed to keep an accurate record of all hours worked by Plaintiffs.

**<u>Individual Liability as to Bejar</u>**

161.   Bejar is personally liable because he acted directly or indirectly in the interests of an "employer" in relation to Mr. C. Smith.

162.   Bejar is the owner and CEO of Wolfpack.

163.   Bejar was directly or indirectly involved in decisions affecting the terms and conditions of Mr. C. Smith's employment, including the decision not to pay him overtime.

## Count II Damages

164.   As a result of Defendants' unlawful conduct, Mr. C. Smith is entitled to recover his unpaid overtime wages and an equivalent amount as liquidated damages, his unpaid non-overtime wages and an equivalent amount as liquidated damages, and his attorneys' fees and costs.

## Estimate of Plaintiff C. Smith's Damages Under Count II

165.   In October 2019, Mr. C. Smith was jointly employed by Defendants. On December 3, 2019 to December 14, 2019, Mr. C. Smith drove a delivery truck that had a GVWR of 10,000 pounds or less.

166.   During that two-week period, Mr. C. Smith consistently worked more than 40 hours per week but was not paid overtime.

167.   Mr. C. Smith was also paid nothing for his non-production time (both overtime and non-overtime) during that period.

168.   During that two-week period, Mr. C. Smith estimates that he worked approximately 10 to 12 hours per day (with no lunch break), five days per week, and approximately 8 to 10 hours (with no lunch break) one day per week.

169.   During that two-week period, Mr. C. Smith estimates that he spent 2.5 hours per day on non-production time, for which he was paid nothing. This consisted of morning time in the warehouse (1.5 hours on average), time spent driving back to the warehouse at the end of the day (45 minutes on average), and time spent returning

undelivered packages (or picked-up packages) and returning the vehicle at the end of the day (15 minutes on average).

170.   During that two-week period, Mr. C. Smith estimates that he spent 49 hours per week on production time and 15 hours per week (2.5 x 6) on non-production time (in other words, 76.56% of his time was production time, and 23.44% was non-production time).

171.   During that two-week period, Mr. C. Smith was paid a fixed daily rate of $150.00 based on the estimated range of daily deliveries.

172.   Based on Mr. C. Smith's good-faith estimate of his work hours, he is owed approximately **$337.27** in actual unpaid wages for his production overtime during this period.[11]

173.    Based on Mr. C. Smith's good-faith estimate of his work hours, he is owed approximately **$310.21** in actual unpaid wages for his non-production overtime during this period.[12]

---

[11] **Dec. 3, 2019 – Dec. 14: 2019:** [18.37 (Production OT hours)] x [2 (weeks)] x [$9.18 (half the production rate)] = **$337.27**. Production overtime hours were calculated as follows: [24 (Total OT hours)] x [0.7656 (percentage of production time)]. The production rate was calculated as follows: [$900 (weekly rate)] / [49 (weekly production hours)].

[12] **Dec. 3, 2019 – Dec. 14: 2019:** [5.63 (Non-Production OT hours)] x [2 (weeks)] x [$27.55 (one-and-one-half times' the production rate)] = **$310.21**. Non-production overtime hours were calculated as follows: [24 (Total OT hours)] x [0.2344 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$900 (weekly rate)] / [49 (weekly production hours)].

174.   Based on Mr. C. Smith's good-faith estimate of his work hours, he is owed approximately **$344.62** in actual unpaid wages for his non-production, non-overtime hours during this period.[13]

## COUNT THREE
### Declaratory Judgment
(All Plaintiffs v. All Defendants)

175.   Plaintiffs reassert and incorporate by reference Paragraphs 17 through 175 of this Complaint as if fully set forth herein.

176.   Plaintiffs Davis, K. Smith, and C. Smith seek a declaration that Defendants FedEx, Prime and Brownstein have violated the FLSA as to them.

Plaintiff C. Smith seeks a declaration that Defendants FedEx, Brownstein and Bejar have violated the FLSA as to him.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully prays for relief as follows:

A. For a trial by jury;

---

[13] **Dec. 3, 2019 – Dec. 14, 2019:** [9.38 (Non-Production Non-OT hours)] x [2 (weeks)] x [$18.37 (the production rate)] = **$344.62.** Non-production, non-overtime hours were calculated as follows: [40 (Total Non-OT hours)] x [0.2344 (percentage of non-production time)]. Non-production hours must be paid at the production rate. The production rate was calculated as follows: [$900 (weekly rate)] / [49 (weekly production hours)].

B. For a declaration that Defendants violated Plaintiffs' rights under the FLSA as set forth herein;

C. For a verdict and judgment in Plaintiffs' favor for unpaid overtime wages and an equivalent amount as liquidated damages;

D. For a verdict and judgment in Plaintiffs' favor for unpaid non-overtime wages and an equivalent amount as liquidated damages;

E. For an award of prejudgment interest to the full extent permitted by law;

F. For an award of reasonable attorneys' fees and costs in accordance with the FLSA, 29 U.S.C. § 216;

G. For all other legal and equitable relief as may be appropriate to effectuate the purposes of the FLSA; and

H. For such other and further relief as this Court deems proper and just.

Date: January 3, 2020

Respectfully submitted,

SMITH LAW, LLC

By:     /s/ Louise N. Smith
        Louise N. Smith
        Georgia Bar No. 131876
        William J. Smith
        Georgia Bar No. 710280
        *Attorneys for Plaintiffs*

3611 Braselton Highway
Suite 202
Dacula, GA 30019
T: (678) 889-2898

F: (844) 828-5615
louise@smithlaw-llc.com
william@smithlaw-llc.com

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed.R.Civ.P. 38(b), Plaintiffs demands a trial by jury.

This 3rd day of January, 2020.

By:   /s/ Louise N. Smith
                Louise N. Smith
                Georgia Bar No. 131876
                *Attorney for Plaintiffs*

## <u>FONT AND POINT CERTIFICATION</u>

The undersigned counsel for Plaintiffs hereby certifies that the within and foregoing **COMPLAINT** was prepared using Times New Roman, 14-point font in accordance with LR 5.1(B).

This 3rd day of January, 2020.

                                                    Respectfully submitted,

By:    /s/ Louise N. Smith
          Louise N. Smith
          Georgia Bar No. 131876
          *Attorney for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of January 2020, I have caused or will cause service to issue upon the Defendant to this Action with the foregoing **COMPLAINT** by personal service pursuant to Fed. R. Civ. P. 4. within the time allowed by Fed. R. Civ. P. 4(m).

Respectfully submitted,

By:   /s/ Louise N. Smith_____
      Louise N. Smith
      Georgia Bar No. 131876
      *Attorney for Plaintiffs*